IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| COMPUTER ACCELERATION CORPORATION, | § § § | |
| Plaintiff, | § § § § | CIVIL ACTION 9-06-cv-140 RHC |
| vs. | § § | |
| MICROSOFT CORPORATION, | § § | JURY TRIAL |
| Defendant. | § § | |

**COMPUTER ACCELERATION CORP.'S RESPONSE TO
[#85] MICROSOFT'S MOTION TO STRIKE PLAINTIFF'S RULE 3-1
INFRINGEMENT CONTENTIONS REFERRING TO WINDOWS VISTA AND
TO DISMISS INFRINGEMENT CLAIMS COVERING WINDOWS VISTA**

# TABLE OF CONTENTS

I. Summary of Response ...............................................................................................1

II. Response to List of Undisputed Material Facts .........................................................2

III. Additional Material Facts ..........................................................................................3

    A. Background of the Dispute ............................................................................3

    B. Substantial Discovery Has Already Been Conducted on Vista ....................6

IV. Argument ....................................................................................................................7

    A. CAC's P.R. 3-1(c) Claim Chart Complies with the Local Rules ..................7

        1. The Local Patent Rules Do Not Require a Separate Chart for Each Accused Product .............................................7

        2. The Authority Cited By Microsoft For Its One-Chart-Per-Product Theory Is Inapposite ...................................8

        3. CAC's P.R. 3-1(c) Claim Chart Places Microsoft on Notice of Claims Against Vista ...........................................9

    B. Microsoft Knew That Vista Was Part of This Case ....................................10

    C. The Relief Sought By Microsoft is Unwarranted and Tantamount to a Death-Penalty Sanction ........................................13

        1. Microsoft's Request for Relief in Unprecedented ....................13

        2. Microsoft Cannot Justify Its Request for Relief .......................14

        3. Death-Penalty Sanctions Are Not Appropriate .........................14

V. Conclusion .................................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Video Graphics, LP v. Elec. Arts, Inc.*,
  359 F. Supp. 2d 558 (E.D. Tex. 2005) .................................................................. 14

*Berry v. Cignaris-Cigna*,
  975 F.2d 1188 (5th Cir. 1992) ............................................................................. 15

*ConnecTel, LLC v. Cisco Sys., Inc.*,
  391 F. Supp. 2d 526 (E.D. Tex. 2005) .................................................................. 7

*Hewlett-Packard Co. v. EMC Corp., No. C 02-04709 JF (PVT)*,
  2003 U.S. Dist. LEXIS 22742 (N.D. Cal. July 9, 2003) ................................... 8, 9

*Mass. Inst. Tech. v. Abacus Software*,
  No. 5:01-cv-DF-CMC, 2004 U.S. Dist. LEXIS 30045 (E.D. Tex. Sept. 10, 2004) ............ 9

*Network Caching Tech., LLC v. Novell, Inc.*,
  No. C-01-2079 VRW, 2003 WL 21699799 (N.D. Cal. Mar. 21, 2003) ............................ 10

*Nike, Inc. v. Adidas Am. Inc.*,
  479 F. Supp. 2d 664 (E.D. Tex. 2007) ........................................................ 7, 13, 15

*Nike, Inc. v. Wolverine World Wide, Inc.*,
  43 F.3d 644 (Fed. Cir. 1994) ................................................................................. 14

*Orion IP, LLC v. Staples, Inc.*,
  407 F. Supp. 2d 815 (E.D. Tex. 2006) .............................................................. 12, 13

*STMicroelectronics, Inc. v. Motorola, Inc.*,
  308 F. Supp. 2d 754 (E.D. Tex. 2004) ................................................................. 14

*Renesas Tech. Corp. v. Nanya Tech. Corp*,
  No. C03-05709JFHRL, 2004 WL. 2600466 (N.D. Cal. Nov. 10, 2004) ............................ 7

## DOCKETED CASES

*Tech. Props. Ltd., Inc. v. Fujitsu Ltd.*,
  CA No. 2:05-cv-494 (TJW) (Nov. 7, 2006) [#162] ................................................ 8

I. **Summary of Response**

Computer Acceleration Corporation's ("CAC") P.R. 3-1(c) claim chart complies with the Local Patent Rules. The two cases Microsoft cites for the proposition that a patent infringement plaintiff must provide a separate claim chart for each product are not applicable to this case. Other courts, as well as **Microsoft's lead attorney**, have recognized that a claim chart may cover more than one accused product.

Microsoft spends a majority of its Motion focusing on CAC's alleged "breach" of a discovery agreement that never occurred and that CAC disclaimed in writing. CAC did what it agreed to do: it re-examined its claim chart in light of the source code and confirmed that no amendment was required or appropriate under the Rules. CAC never agreed to amend its 3-1 claim chart; to the contrary, and CAC stated in writing that it was not agreeable to doing so.

Microsoft cannot claim that it did not know that both XP and Vista are accused products in this case: CAC's counsel stated so in open Court at the scheduling conference in October of last year. Microsoft was informed of CAC's infringement theories regarding Windows Vista ("Vista") in November 2006 when CAC submitted its infringement claim chart. CAC stated in its claim chart that its infringement theories for Vista are the same as its infringement theories for Windows XP ("XP"). As stated in CAC's original (and only) claim chart, Vista infringes the '630 patent because its "superfetcher" functionality includes XP's "prefetcher" functionality. Microsoft's failure to challenge any aspect of CAC's 3-1 XP claim chart is an admission that the claim chart is legally sufficient as to both Vista and XP. Microsoft understood that Vista was part of this case; it produced Vista source code without lodging any of the complaints it makes now.

The relief sought by Microsoft in its Motion is unprecedented, unwarranted, and tantamount to a death-penalty sanction against CAC. Microsoft has suffered no harm, and

striking Vista as an accused product would cause CAC to forfeit the hundreds of hours and tens of thousands of dollars it has spent reviewing Vista source code and Vista-related documents Microsoft voluntarily produced in this case. Microsoft's factual assertions are inaccurate, its legal positions are misplaced, and it comes to the Court with unclean hands. If Microsoft's concern underlying this motion is that CAC will attempt to amend its 3-1 claim chart, CAC stipulates that it has not and will not attempt to do so. However, the sanctions Microsoft requests are not justified and its motion should be denied.

## II.    Response to List of Undisputed Material Facts

1. Undisputed.

2. Undisputed.

3. Undisputed, but context clarified in paragraphs 10-13 in Additional Material Facts Section.

4. Undisputed, but context clarified in paragraphs 14-19 (first production) and 20-27 (second production) in Additional Material Facts Section.

5. Undisputed, but context clarified in paragraphs 25-28 in Additional Material Facts Section.

6. Undisputed.

7. Undisputed, but context clarified in paragraphs 10-13 and 25-28 in Additional Material Facts Section.

8. Undisputed but not material.

III.  **Additional Material Facts**

   A.  **Background of the Dispute**

   9.  During the October 30, 2006, Case Management Conference, CAC's lead counsel, Mike McKool, announced that CAC was accusing both XP and Vista of infringing U.S. Patent No. 5,933,630 (the "'630 patent"). (CAC Ex. 1, Transcript of Conf. [#23].)

   10.  On November 1, 2006, CAC served its P.R. 3-1 Disclosure and Infringement Contentions and listed XP and Vista as accused products. (CAC Ex. 2, CAC's P.R. 3-1 Infring. Contentions, at 1.)

   11.  CAC's 3-1(c) claim chart provided the basis for its infringement claims against Vista in footnote 2, stating:

   > Based on information [and] belief, CAC also contends that **Microsoft Windows Vista infringes the asserted claims of the '630 patent**. *See, e.g.*, Attachment H (Windows Vista: Superfetch and External Memory Devices) at 2 ("Now that you know how Windows XP's Prefetch technology works, you have a good idea of how about 70 percent of Windows Vista's Superfetch technology works. As the next version of Windows XP's Prefetch, Superfetch does everything that Prefetch does and more.") (emphasis added). (CAC Ex. 2, at 6.)

   12.  CAC referenced this language on every page of its 3-1(c) claim chart. (*See* CAC Ex. 2, 6-14, "Windows XP[2]".)

   13.  CAC attached the article quoted in footnote 2 that formed the basis of its infringement claims against Vista to its P.R. 3-1 Contentions. (CAC Ex. 2, 15-18.)

   14.  On November 3, 2006, the Court issued its Scheduling Order, and ordered: "In addition, Defendant will produce the source code for the accused ***products*** by December 15." (CAC Ex. 3, Scheduling Order [#26]) (emphasis added).

   15.  On December 21, CAC contacted Microsoft regarding its failure to produce the Vista code. (CAC Ex. 4, Ltr. from G. Janik to K. Kudlac Re: Vista Code Production.)

16. On December 22, Microsoft informed CAC that it would not produce any Vista code unless CAC created a separate Vista claim chart. (CAC Ex. 5, Ltr. from K. Kudlac to G. Janik Re: Vista Code Production.)

17. In response to the December 22nd letter, CAC wrote Microsoft's lead counsel about the Vista source code dispute, and advised Microsoft that it believed there was no purpose for, or requirement to create, a separate Vista claim chart because it would constitute a mere repetition. CAC again demanded production of the Vista code. (CAC Ex. 6, Ltr. from R. Parker to D. Healey Re: Vista Code Production.)

18. **On January 17, 2007, Microsoft agreed to produce the Vista code without requiring CAC to create a separate Vista claim chart.** (CAC Ex. 7, Ltr. from D. Healey to R. Parker Re: Vista Code Production.)

19. On February 5, Microsoft produced portions of the Vista code. (CAC Ex. 16, Microsoft's First Supplemental Initial Discl., at 10.)

20. On February 14, CAC contacted Microsoft regarding the production of additional Vista code it needed to evaluate fully infringement by the accused product. (CAC Ex. 8, Ltr. from G. Janik to B. Elacqua Re: Additional Vista Code Production.)

21. On March 16, CAC followed-up with Microsoft on the additional requested code. (CAC Ex. 9, Email String Between Counsel Re: Vista.) **Microsoft made no reference to a request for a separate Vista claim chart, but instead stated that it was working on providing the additional Vista code during the week of March 19th.** (*Id.*)

22. On March 26, Microsoft indicated its intent to produce the additional Vista code that day. (CAC Ex. 10, Email from B. Elacqua to G. Janik and J. Campbell Re: Additional Vista Code.) **Microsoft made no reference to a request for a separate Vista claim chart.** (*Id.*)

23. On April 9, CAC inquired about production of the additional Vista code. (CAC Ex. 11, Email String Between Counsel Re: Vista.) Microsoft indicated that the additional Vista code would be produced the week of April 9th and **made no reference to a request for a separate Vista claim chart**. (*Id.*)

24. Following the three promises to produce the additional Vista code without any condition for a separate Vista claim chart, on April 13, Microsoft reneged on its pledge to produce the additional code. (CAC Ex. 12, Ltr. from K. Kudlac to G. Janik Re: Additional Vista Code.) In the April 13th letter, Microsoft revived its abandoned position that it would not produce any additional Vista code unless CAC agreed to file a motion to amend its infringement contentions and create a separate Vista claim chart. (*Id.* at 1.)

25. Robert M. Parker, Counsel for CAC, and Microsoft counsel met in-person on April 25th about the Vista code dispute. (CAC Ex. 19, Decl. of G. Janik, at ¶ 29.) While CAC believed the production of a second claim chart with entries identical to those in the in the original chart was uncalled for, to remove any barriers to further delay, on May 1st CAC agreed to provide Microsoft with a "Vista claim chart" within 45 days of receiving the additional Vista code. (CAC Ex. 13, Ltr. from G. Janik to B. Elacqua Re: Additional Vista Code.) CAC explicitly stated: "**This claim chart, however, will not be provided to Microsoft in connection with any attempt by CAC to amend its P.R. 3-1 Infringement Contentions.**" (*Id.*)

26. On May 3, Microsoft agreed to produce the additional Vista code, but advised CAC that if the chart it produced differed from its November 2006 claim chart it reserved the right to "object to the claim chart as being an unauthorized amendment." (CAC Ex. 14, Ltr. from B. Elacqua to G. Janik Re: Additional Vista Code.)

27.  On May 4, 2007, Microsoft produced the additional Vista code CAC requested on February 14. (CAC Ex. 16, at 10.)

28.  On May 23, Microsoft stipulated that "the versions of Windows Vista source code produced in this litigation is, for purposes related to this lawsuit, representative of and identical to all versions of 'Windows Vista.'" (CAC Ex. 22, Stipulation of CAC and Microsoft [# 75].)

29.  On June 19, based on its prior agreement and in response to Microsoft's threat to file a motion to strike a claim chart that differed from CAC's November 2006 claim chart, CAC reproduced its original claim chart, reconfirmed that the chart applied to Vista as well as XP, and confirmed that nothing in the Vista source code required an amendment to its original claim chart. (Ex. 15, Ltr. from G. Janik to B. Elacqua Re: Claim Chart.)

**B.    Substantial Discovery Has Already Been Conducted on Vista**

30.  In this lawsuit, Microsoft has produced over 10,000 documents that reference Vista and over 6,000 documents that reference Superfetch—the portion of Vista CAC accuses of infringing the '630 patent. (CAC Ex. 19, at ¶ 25.)

31.  Microsoft has disclosed seven witnesses who will provide testimony on Vista. (CAC Ex. 16, at 7-9.) Depositions for each of these witnesses have been scheduled to occur over the next few weeks. (CAC Ex. 19, at ¶ 26.)

32.  Microsoft has provided 30(b)(6) deposition testimony regarding Vista, and additional 30(b)(6) deposition testimony is scheduled to occur over the next few weeks. (CAC Ex. 19, at ¶ 26.)

33.  Microsoft has questioned CAC's witnesses regarding Vista. (CAC Ex. 17, Depo. of C. Ballard 264-269; CAC Ex. 18, Depo. of T. Smith 264-265.)

34.  CAC's has spent tens of thousand of dollars and scores of man-hours analyzing Vista code in preparation for expert reports, depositions, and trial. (CAC Ex. 19, at ¶ 28.)

35.     Throughout the entire claim construction process, both in briefing and during oral argument, Microsoft did not make a single reference to its inability to prepare its case based on any alleged defect with CAC's infringement contentions. (CAC Ex. 19, at ¶ 27.)

## IV.  Argument

### A.  CAC's P.R. 3-1(c) Claim Chart Complies with the Local Rules

#### 1. The Local Patent Rules Do Not Require a Separate Chart for Each Accused Product

The threshold issue raised by Microsoft's Motion[1] is whether CAC's claim chart complies with the Local Patent Rules. Microsoft's claim that the Local Patent Rules require a patentee to create a separate claim chart for each product is wrong. "[T]he text of patent L.R. 3-1(c) only requires 'a chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality,' not a separate chart for each individual product." *Renesas Tech. Corp. v. Nanya Tech. Corp*, No. C03-05709JFHRL, 2004 WL 2600466, at *2 (N.D. Cal. Nov. 10, 2004).[2] It is impractical and unduly burdensome to require patent holders to create a separate chart for each accused product. *See ConnecTel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527, 529 (E.D. Tex. 2005) (ordering plaintiff to select exemplar products from over 100 accused product and provide claim charts for selected examples). A rule requiring separate charts for each accused products, no matter how similar the product and the basis for infringement, would directly contradict the goal of FED. R. CIV. P. 1 to ensure "just, speedy, and inexpensive determination of every action."

---

[1] CAC refers to Microsoft's Motion to Strike Plaintiff's Rule 3-1 Infringement Contentions Referring to Windows Vista and To Dismiss Infringement Claims Covering Windows Vista as the "Motion" or "Mot."

[2] This Court has indicated that it regards interpretation of the Local Patent Rules by the Federal District Court for the Northern District of California, from where the Eastern District Local Patent Rules were derrived, as persuasive authority. *Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664, 667, fn 2 (E.D. Tex. 2007).

### 2. The Authority Cited By Microsoft For Its One-Chart-Per-Product Theory Is Inapposite

Microsoft cites two authorities for the proposition that a patent-infringement plaintiff must provide a claim chart for each accused product. (Mot. at 10.) The first is a bare-bones order from Judge Ward in which he required the plaintiff to produce claim charts for each accused product in response to the plaintiff's request to amend its preliminary infringement contentions. Order at 1, *Tech. Props. Ltd., Inc. v. Fujitsu Ltd.*, CA No. 2:05-cv-494 (TJW) (Nov. 7, 2006) [#162]. While the Order does not provide extensive reasoning, it appears from the briefing that the plaintiff attempted to add hundreds of new accused products by amending its infringement contentions. *See* Opposition of MEI, PNA, and JVC to TPL's Motion to Amend its Preliminary Infringement Contentions at 1, *Tech. Props. Ltd., Inc.*, (Aug. 26, 2006) [#108-1]. (CAC Ex. 20.) The Order appears to be a response to an attempt to add a plethora of new products; it addressed the specific facts of that case. Order, *Tech. Props. Ltd.,* ("If Plaintiff has sufficient information to allege infringement of entire chip families, then Plaintiff should also have sufficient information to allege infringement for each product within the chip families."). In fact, while representing one of the defendants in the *Tech. Props.* suit, Microsoft's lead attorney in this case, David Healey, told the court, "**Of course it would be acceptable to provide a single chart for a series of products when there is a fair basis to believe that the separate products are the same for purposes of infringement**." *Tech. Props. Ltd.,* [#108-1] Opposition, at 5. (CAC Ex. 20, at 5.)

Microsoft's only other authority for its one-chart-per-product theory is *Hewlett-Packard Co. v. EMC Corp.*, No. C 02-04709 JF (PVT), 2003 U.S. Dist. LEXIS 22742, at *3 (N.D. Cal. July 9, 2003). Microsoft completely ignores that court's caution against trying to use its ruling

as broadly applicable precedent: "The holding of this court is limited to the facts and the particular circumstances underlying the present motion." *Id.* at *2.[3]

### 3. CAC's P.R. 3-1(c) Claim Chart Places Microsoft on Notice of Claims Against Vista

Vista was not released to the public until January 2007—two months after CAC's infringement contentions were due. (Mot. at 3.) CAC, therefore, had no access to Vista source code and only limited access to information on Vista. It was forced to rely on the publicly available statements of Microsoft about Vista. The public information indicated that "Prefetch" (the specific XP functionality CAC accuses of infringing the '630 patent) would be incorporated into Vista's "Superfetch." (CAC Ex. 2, 15-18.) CAC attached the article forming the basis of its infringement case against Vista to its infringement contentions and referenced the article in footnote 2 of its claim chart. (*Id.* at 6.) This footnote, referenced on every page of CAC's claim chart (*id.* at 6-14), placed Microsoft on notice that CAC's infringement case against Vista is based on the incorporation of XP's Prefetch into Vista's Superfetch.

The Local Patent Rules require the parties to crystallize their theories of the case and adhere to those theories once they have been disclosed. *Mass. Inst. Tech. v. Abacus Software*, No. 5:01-cv-DF-CMC, 2004 U.S. Dist. LEXIS 30045, at *18 (E.D. Tex. Sept. 10, 2004). This is precisely what CAC has done—it articulated its infringement theories against XP and Vista in November 2006, and it has not wavered. Microsoft complains that it is "incredible" and "cannot possibly be true" that CAC has no additional information regarding its infringement case against Vista. (*See* Mot. at 4, 14.) Of course, with discovery, CAC has additional evidence regarding its case against both XP and Vista, but it has been confirmatory and requires no amendment. The

---

[3] Based on the briefing in the *Hewlett-Packard* case, it appears the plaintiff improperly identified accused products by citing overbroad product families in its infringement contentions. *Hewlett-Packard*, Defendant EMC Corp.'s Notice of Motion and Motion to Strike Plaintiffs' Amended Initial Disclosure of Asserted Claims and Preliminary Infringement Contentions at 11-12 (Mar. 21, 2003) [#59]. (Attached as CAC Ex. 21.)

L.R. 3-6 standards for amending infringement contentions places CAC under no obligation to amend its contentions each time it receives additional evidence for its infringement case.

Microsoft understands CAC's theory of infringement regarding Vista because it stipulated that the relevant code sections of all versions of Vista are "identical" for purposes of this litigation. (CAC Ex. 22.) The source code for the different versions of Vista is obviously different. Without a clear understanding that CAC accuses Vista of infringement based upon its inclusion of XP's Prefetcher functionality, Microsoft's lawyers could not stipulate that all versions of Vista are identical for purposes of this lawsuit.

Microsoft argues that CAC's failure to amend its infringement contentions is an admission that CAC "has no case against Vista." (Mot. at 12.) This argument demonstrates Microsoft's misunderstanding of the purpose of infringement contentions. Infringement contentions "are not meant to provide a forum for litigation of substantive issues; they are merely designed to streamline the discovery process." *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079 VRW, 2003 WL 21699799, at *5 (N.D. Cal. Mar. 21, 2003).

CAC's infringement contentions and claim chart comply with L.R. 3-1 by placing Microsoft on notice of its infringement case against XP and Vista.

### B. Microsoft Knew That Vista Was Part of This Case

Microsoft has been on notice since the October 2006 that Vista is an accused product in this case. (CAC Ex. 1, at 6.) During the Case Management Conference, CAC's lead counsel, Mike McKool, announced that CAC was accusing both XP and Vista of infringing the '630 patent. (*Id.*) On November 3, 2006 the Court ordered Microsoft to produce source code for the "accused products" by December 15, 2006. (CAC Ex. 3, at 6.) Microsoft failed to challenge the inclusion of Vista, and, indeed, produced Vista source code and other Vista-related materials.

In January, after the intervention of CAC senior counsel, Robert Parker, Microsoft dropped its demand for a separate Vista claim chart and produced Vista source code. (*See* CAC Exs. 6, 7.) CAC promptly reviewed the Vista source code and requested several relevant code directories excluded from Microsoft's initial Vista code production. (CAC Ex. 8.) On March 16th, Microsoft committed to produce the additional Vista code within a week. (CAC Ex. 9.) After ten days passed without production, Microsoft promised it would produce the code on March 26th. (CAC Ex. 10.) The code was not produced on March 26th, but Microsoft assured CAC that it would be produced the week of April 9th. (CAC Ex. 11.) It was not until April 13th that Microsoft reversed course. (CAC Ex. 12.)

After a two-month delay and three promises to produce the additional Vista code without strings attached, Microsoft informed CAC that it would not produce the additional code unless CAC filed a motion to amend its infringement contentions. (*Id.*) Despite Microsoft's changing positions, CAC negotiated with Microsoft to obtain the additional Vista code it needed. On May 1st, CAC agreed to provide Microsoft with a Vista claim chart upon receipt of the additional code it had requested in February. (CAC Ex. 13.) **CAC, however, explicitly stated that it would not amend its infringement contentions**: "This claim chart, however, will not be provided to Microsoft in connection with any attempt by CAC to amend its P.R. 3-1 Infringement Contentions." (*Id.*)

On May 3, Microsoft attempted to renege on this deal. In response to CAC's notice that it would not amend its infringement contentions, Microsoft stated that it would file a motion to strike any chart provided by CAC as an improper attempt by CAC to amend its 3-1 contentions. Microsoft wrote a letter stating: "However, to the extent the Windows Vista infringement claim

chart goes outside CAC's P.R. 3-1 infringement contentions, Microsoft reserves the right to object to the claim chart as being an unauthorized amendment." (CAC Ex. 14.)

Thus, Microsoft positioned itself to complain no matter what course CAC chose. It would move to strike CAC's 3-1 Vista contentions if CAC provided anything that differed from its 3-1 claim chart. Conversely, it would (as it has) move to strike CAC's 3-1 Vista contentions if CAC did not change its chart, claiming that CAC breached an agreement to provide a new chart. The problem with Microsoft's plan is that CAC's 3-1 claim chart is legally appropriate, and CAC never agreed to **alter** its 3-1 claim chart—in fact it expressly stated in writing that it was not agreeing to do so.

CAC conducted a good-faith review of its original 3-1 claim chart and determined that there is no basis to change it. It did produce a chart confirming the allegations contained in the original chart. If Microsoft truly believed CAC's claim chart was inadequate, it certainly would have brought this issue before the Court last year. "A defendant cannot lay behind the log until late in the case and then claim it lacks notice as to the scope of the case or the infringement contentions." *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 818 (E.D. Tex. 2006).

Microsoft is well-aware of the scope of CAC's case against Vista. It has produced over 16,000 documents related to either Vista or Superfetch. (CAC Ex. 19, ¶ 25.) It has identified seven witnesses with knowledge relevant to Vista, and it has offered these witnesses, as well as 30(b)(6) representatives, for deposition. (*Id.* at 26.) Moreover, Microsoft did not lodge a single objection to CAC's claim chart during the entire claim construction process. (*Id.* at 27.) Microsoft's actions demonstrate it has fully understood CAC's case against Vista. To raise this issue now is inappropriate. *Nike, Inc.*, 479 F. Supp. 2d at 667 (stating the Local Patent Rules do not exist "to create supposed loopholes through which parties may practice litigation by

ambush") (internal citations omitted); *Orion IP, LLC*, 407 F. Supp. 2d at 818 ("[T]he burden of the notice of the Patent Rules place on plaintiffs is intended to be a shield for defendants, not a sword."). Microsoft accuses CAC of "gamesmanship" and "broken promises" (Mot. at 9), but it is Microsoft's conduct, not CAC's, that should be so characterized. It was Microsoft that promised three times unconditionally to produce the Vista code before manufacturing the inconsistent position that is the basis for this motion.

### C. The Relief Sought By Microsoft is Unwarranted, and Tantamount to a Death-Penalty Sanction

The relief Microsoft seeks in its Motion is extraordinary. It requests that the Court dismiss CAC's entire infringement case against Vista *with prejudice*, or alternatively, limit the evidence CAC may introduce regarding Vista to the content of footnote 2 cited in CAC's claim chart, which Microsoft would undoubtedly later posit, is tantamount to the same thing. (Mot. at 2.) Microsoft has no legal support or justification for the relief it requests. It has shown no harm that would merit a death-penalty sanction, and Microsoft has presented the Court with no evidence that merits such a sanction.

#### 1. Microsoft's Request for Relief in Unprecedented

Microsoft has failed to direct this Court to any authority that supports dismissing Vista from the case. The single case it cites in support of the relief it requests, *Nike, Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 648-49 (Fed. Cir. 1994), is not relevant. In *Wolverine*, the plaintiff gave deposition testimony that it was not asserting an infringement claim based on the doctrine of equivalents. *Id.* at 648. After the close of discovery, the plaintiff announced it was beginning tests to determine whether it could prove infringement under the doctrine of equivalents. *Id.* at 649. The court, however, barred the plaintiff's theory because of untimely disclosure. *Id.* None of those facts are present here, as Microsoft has been on notice since

October 2006 that CAC is accusing Vista of infringing the '630 patent, and CAC has not changed its position.[4]

### 2. Microsoft Cannot Justify Its Request for Relief

Microsoft has failed to show any harm it suffered as a result of its dispute over CAC's claim chart. It complains that it is "prejudiced because it knows no more about CAC's contentions regarding Windows Vista than it did nearly eight months ago" (Mot. at 11), but this complaint reveals a misunderstanding of the purpose of infringement contentions. *See Network Caching Tech., LLC*, 2003 WL 21699799, at *3 (noting that infringement contentions are not designed to litigate substantive issues); *see also STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755-56 (E.D. Tex. 2004) (denying motion to compel requesting that additional information be disclosed in infringement contentions).

Microsoft was able to brief and argue its claim construction position fully, without a single complaint regarding CAC's claim chart, it has engaged in a substantial amount of discovery on Vista, and Microsoft has deposed CAC witnesses regarding Vista. (CAC Ex. 19, ¶¶ 25-28.) Moreover, in accordance with the Court's Scheduling Order, Microsoft will receive CAC's expert report on infringement (for both XP and Vista) at the end of the month. This report will set forth the level of detail regarding CAC's case that Microsoft appears to seek improperly from CAC's infringement contentions.

### 3. Death-Penalty Sanctions Are Not Appropriate

Dismissal of Vista from this case with prejudice amounts to a death-penalty sanction against CAC for one of the two products it accuses of infringement. Dismissal with prejudice is

---

[4] Microsoft also argues that dismissal is proper because CAC "has failed to follow this Court's orders," but CAC was not ordered to amend its infringement contentions. CAC's 3-1(c) claim chart is sufficient to place Vista in dispute. However, if the Court disagrees with CAC, the proper relief would be an order instructing CAC to amend its claim chart. *See Am. Video Graphics, LP v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 561 (E.D. Tex. 2005).

an extreme sanction that deprives a litigant an opportunity to pursue its claims. *Berry v. Cignaris-Cigna*, 975 F.2d 1188, 1191 (5th Cir. 1992).

This Court has set forth a list of non-exclusive factors it uses when determining sanctions. *See Nike, Inc.*, 479 F. Supp. 2d at 668. The key factors for this Motion are "importance of the particular matter" versus "the danger of unfair prejudice to the non-movant." *Id.* Microsoft has failed to demonstrate the importance of this dispute and has offered no credible evidence of any alleged harm it has suffered. Microsoft erroneously complains that CAC is "flagrantly violating" a discovery agreement and urges the Court to "react strongly to prevent these sort of abusive litigation tactics," (Mot. at 12), while hoping that the Court will ignore its own delays and broken promises. It also asks the Court to ignore Microsoft's threat that it would file a motion to strike Vista regardless of the manner CAC chose to honor its agreement. (*See* CAC Ex. 14.) Microsoft's unclean hands further diminish the importance of this dispute. If the Court granted Microsoft's relief, the hundreds of hours spent by CAC attorneys analyzing Vista documents and preparing for Vista-related depositions as well as the tens of thousands of dollars spent on experts analyzing Vista code and preparing expert reports—much of which effort was expended while Microsoft was repeatedly agreeing to treat Vista as part of this case without complaint—would be wasted.

## V. Conclusion

If Microsoft's concern underlying this motion is that CAC will attempt to amend its 3-1 claim chart, CAC stipulates that it has not and will not attempt to do so. However, the sanctions Microsoft requests are not justified and its motion should be denied.

For the reasons set forth herein, CAC respectfully requests the Court deny Microsoft's Motion.

DATED: July 12, 2007

Respectfully submitted,

**McKool Smith, P.C.**

    /s/ Mike McKool
Mike McKool, Jr.
Lead Attorney
Texas State Bar No. 13732100
mmckool@mckoolsmith.com
Robert M. Manley
Texas State Bar No. 00787955
rmanley@mckoolsmith.com
Glenn E. Janik
Texas State Bar No. 24036837
gjanik@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Of Counsel:

**Parker, Bunt & Ainsworth P.C.**

Robert M. Parker
Texas State Bar No. 15498000
rmparker@pbatyler.com
Chris Bunt
rcbunt@pbatyler.com
Charles Ainsworth
charley@pbatyler.com
100 E. Ferguson Street, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Telecopier: (903) 533-9687

Sam Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
P.O. Box O
505 E. Travis, Suite 105
Marshall, Texas 75670
Telephone: (903) 927-2111
Telecopier: (903) 927-2622

**Law Offices of Claude Edward Welch**

Claude Edward Welch
Texas State Bar No. 21120500
welchlawoffice@consolidated.net
P. O. Box 1574
Lufkin, Texas 75902
Telephone: (936) 639-3311
Telecopier: (936) 639-3049

Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
John B. Campbell
Texas State Bar No. 24036314
jcampbell@mckoolsmith.com
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

**ATTORNEYS FOR PLAINTIFF
COMPUTER ACCELERATION CORP.**

Case 9:06-cv-00140-RC   Document 92   Filed 07/12/07   Page 20 of 20 PageID #: 1875

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this the 12th day of July, 2006.

/s/ Mike McKool
Mike McKool