IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| COMPUTER ACCELERATION | § | |
| CORPORATION, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 9:06-CV-140 |
| | § | |
| v. | § | |
| | § | JUDGE RON CLARK |
| MICROSOFT CORPORATION, | § | |
| | § | |
| *Defendant.* | | |

## ORDER GRANTING MICROSOFT'S MOTION TO STRIKE PORTION OF PLAINTIFF'S RULE 3-1 INFRINGEMENT CONTENTIONS

Defendant Microsoft Corporation ("Microsoft")  seeks to strike Plaintiff Computer Acceleration Corporation's ("CAC") infringement contentions related to Microsoft's Windows Vista ("Vista") product, for being insufficiently detailed in  violation of  P.R. 3-1(c) of the Rules of Practice for Patent Cases of the Eastern District of Texas.   [Doc. #85]    The infringement contentions were contained in a footnote, which indicated that Vista infringed in a manner similar to the Windows XP product.  The XP product, for which a lengthy claim chart was provided,  does about seventy percent of what the Vista product does.  The court must reject CAC's argument that merely placing Microsoft "on notice" of claims complies with the requirement of P.R. 3-1(c)  for a claim chart with detailed  infringement contentions.

### I. Background

CAC alleges that Microsoft infringes U.S. Patent No. 5,933,630 ("the '630 patent").  The '630 patent generally relates to a method and apparatus that optimizes access to a computer program storage device during program start-up, and reduces launch time of a computer.

1

On November 1, 2006, CAC served its Disclosure and Preliminary Infringement Contentions as required by P.R. 3-1.[1]  Included was a chart that identified each element of the asserted claims of the '630 patent against the Microsoft Windows XP product.  Vista was referenced in a footnote of CAC's Infringement Contentions.

On December 21, 2006, CAC requested that Microsoft produce source code for the Vista product.  Microsoft disagreed that the Vista product was properly included as an accused product, but produced the requested source code on February 5, 2007.

On February 14, 2007, CAC requested additional Vista source code so that CAC would be able to "fully evaluate Windows Vista," which Microsoft produced on May 4, 2007.  Microsoft now seeks to strike CAC's infringement contentions and dismiss the claims related to the Vista product because CAC has refused to amend its P.R. 3-1 Infringement Contentions and provide the required  claim chart concerning its allegations against the Vista product.

## II. Standard of Review

### A. Local Patent  Rules

There is a tension between the necessity for orderly and complete discovery on the one hand, and the  desire of litigants to attain important tactical advantages by delaying or avoiding disclosure of key elements of their case. Over time, the Federal Rules of Civil Procedure have been amended  in favor of full and open discovery.  *See* Fed. R. Civ. P. 26 Advisory Committee

---

[1]The local patent rules were amended on October 27, 2006 and the word "preliminary" was eliminated from all references to infringement contentions and invalidity contentions.  The rule change does not substantively affect any of the issues in this case, and the court will refer to the current rules.

note (1993 Amendments).  The Rules are to be "construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

Some district courts have recognized that the normal discovery process can be very cumbersome and expensive in a complicated patent case.  To balance the competing interests of the parties, these courts have adopted local patent rules and frequently enter special scheduling orders.  *See* Fed. R. Civ. P. 16(c)(6) and (12).  This tracks suggestions made in the MANUAL FOR COMPLEX LITIGATION, FOURTH, § 11.212.

Local patent rules are a valid exercise of a court's authority to manage its docket in accordance with the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 83; *O2 Micro International Limited v. Monolithic Power Systems*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006); *Genetech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002).  The judges of the Eastern District of Texas unanimously adopted the "Rules of Practice for Patent Cases," patterned after local rules adopted by the United State District Court for the Northern District of California.  They are posted on the Court's website, and each party was informed in the Order Governing Proceedings that they would apply.  The Scheduling Order in this case set deadlines for the parties to complete actions required by the various provisions of these local patent rules.

The local patent rules  "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *IXYS Corp. v. Advanced Power Tech., Inc.*, 2004 WL 1368860, * 3 (N.D. Cal. June 16, 2004); *see also STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F.Supp.2d 845, 849 (E.D. Tex. 2004).

A court has the inherent power to enforce its scheduling orders and to impose sanctions. Fed. R. Civ. P. 16(f); *see O2 Micro Intern. Ltd.,* 467 F.3d at 1363; *Flaska v. Little River Marine Const. Co.*, 389 F.2d 885, 887 n. 3 (5th Cir. 1968).  However, interpretation and enforcement of discovery provisions of local rules should not conflict with, and should harmonize with, the discovery provisions of the Federal Rules of Civil Procedure.  *See O2 Micro Intern. Ltd.,* 467 F.3d at 1365.  Deciding whether infringement contentions should be struck,  is similar to deciding whether evidence should be excluded for discovery violations.  It is also akin to deciding whether the pleading deadlines of a scheduling order should be extended.  Therefore, the court will consider the kinds of factors identified as important in making both types of decisions.  *See O2 Micro Intern. Ltd.,* 467 F.3d at 1366; *Finisar v. DirecTV Group, Inc.*, 424 F.Supp.2d 896, 899 (E.D. Tex. 2006).  A non-exclusive list of factors considered by courts includes:

1. The danger of unfair prejudice;

2. The length of the delay and its potential impact on judicial proceedings;

3. The reason for the delay, including whether it was within the reasonable control of the party responsible for the delay;

4. The importance of the particular matter, and if vital to the case, whether a lesser sanction would adequately address the other factors to be considered and also deter future violations of the court's scheduling orders, local rules, and the federal rules of procedure; and

5. Whether the offending party was diligent in seeking an extension of time, or in supplementing contentions, after an alleged need to disclose the new matter became apparent.

*See, e.g., Betzel v. State Farm Lloyds*, – F.3d –, 2007 WL 603036, *2 (5th Cir. 2006)(listing factors to consider for exclusion of evidence); *Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782

4

(6th Cir. 2003)(rule 37(c)(1) mandates that a trial court punish a party for failure to make disclosures under Rule 26, unless the violation is harmless or is substantially justified); *S & W Enters., L.L.C. v. Southtrust Bank of Alabama, N.A.*, 315 F.3d 533, 535 (5th Cir. 2003) (party seeking leave to amend a court's scheduling order must show "good cause," i.e., that the deadlines cannot reasonably be met despite the diligence of the party seeking the extension.); *Pioneer Inv. Servs. Co. v. Brunswick Assoc.*, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 (1993) (listing factors in determining excusable neglect).

## B. Patent Rule 3-1

Under P.R. 3-1, a party asserting infringement must  identify each claim that is allegedly infringed, and identify  "separately for each asserted claim, each accused apparatus, product, device, process method . . . of each opposing party of which the party is aware."  P.R. 3-1(a)-(b). P.R. 3-1(c) provides the party asserting infringement must also provide

> a chart identifying *specifically* where *each* element of *each* asserted claim is found within *each* Accused Instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identifying structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function. (emphasis added).

These contentions are a way to streamline the discovery process.  *STMicroelectronics, Inc.*, 307 F.Supp.2d at 755.  The contentions must be specific enough to give a defendant notice of plaintiff's infringement claims and must go beyond that  provided by the mere  language of the patent.  *Id.*

## III. Analysis

## A.  Danger of Unfair Prejudice

Microsoft argues that it will suffer unfair prejudice because CAC's P.R. 3-1 infringement contentions fail to identify where each asserted element of each asserted claim of the '630 patent

are found within the Vista product.  CAC argues that the infringement contentions are sufficient to place Microsoft on notice of the infringement claims being asserted against Windows Vista, and that CAC does not have to provide a separate chart for two products when there is a fair basis to believe that separate products are identical for infringement purposes.

In its P.R. 3-1 Infringement Contentions, CAC provides a nine-page claim chart detailing where each element of each asserted claim is found within the Microsoft Windows XP product. CAC includes only a footnote about Vista, which reads:

> Based on information on belief, CAC also contends that Microsoft Windows Vista infringes the asserted claims of the '630 patent.  *See, e.g.,* Attachment H (Windows Vista: Superfetch and External Memory Devices) at 2 ("Now you know how Windows XP's Prefetch technology works, you have a good idea of how *about 70 percent of* Windows Vista's SuperFetch technology works.  As the next version of Windows XP's Prefetch, SuperFetch does everything that Prefetch does and more.") (emphasis added)

The local patent rules were adopted, in part, to streamline the discovery process and provide both parties with the information required to litigate their case.  According to the parties, and CAC's footnote, perhaps only 70 percent of CAC's claims against Vista are related to the claims against Windows XP. This is not a situation where identical infringement contentions are asserted among the accused products.  *Cf. Renesas Tech. Corp. v. Nanya Tech. Corp.*, No. C03-05709JFHRL, 2004 WL 2600466 (N.D. Cal. Nov. 10, 2004) (holding that defendant is not required to make separate charts where the infringement contentions are identical for each accused product.) Microsoft should not have to guess which claims CAC will assert against Vista.  "Seventy percent is good enough" is not the standard under the Federal or local rules.

It is undisputed that there are differences between the Prefetch technology used by Windows XP and the SuperFetch technology utilized by Vista. This factor weighs heavily in favor of striking the infringement contentions involving Vista.

**B.  Explanation of Delay**

CAC argues that the initial chart disclosed was created using publicly available information about Vista.   "In software cases, the Court has recognized the pragmatic limitation on detailed [infringement contentions] when plaintiffs do not have the necessary access to non-public software, which is needed to make detailed infringement contentions."  *Orion IP, LLC v. Staples, Inc.*, 407 F.Supp.2d 815, 817 (E.D. Tex. 2006).   However, Microsoft, without wasting the court's time, voluntarily turned over the software code upon CAC's request.   CAC admits that they have been allowed to obtain additional evidence regarding Vista.   P.R. 3.6 allows amendment of infringement contentions, yet CAC does not even seek amendment.[2]

Instead CAC argues that  it would be "unduly burdensome to require patent holders to create a separate chart for each accused product."   CAC relies on *ConnecTel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526 (E.D. Tex. 2005) for the proposition that patent holders are not required to create a separate chart for each accused product.  *ConnecTel* involved over 100 accused products, 120 claims, and four patents-at-issue.  Although the court in *ConnecTel* did not order separate charts for every infringing product, the  plaintiff was required to produce exemplar charts comparing each

---

[2]Of course, the right to amend under P.R. 3-6 is still subject to the court's and CAC's countervailing duty to avoid unfairly prejudicing Microsoft "through eleventh-hour alterations." *IXYS Corp. v. Advanced Power Tech., Inc.*, 2004 WL 1368860 * 1 (N.D. Cal. June 16, 2004) (interpreting that court's Local Patent Rule 3-6).   However CAC had the information months ago, and Microsoft agreed to, and even asked for an amended chart.

infringing product to each  claim on an element-by-element basis.  This case involves only two accused products and two asserted claims.  Moreover, CAC has been provided with all relevant source code relating to the Vista product.[3]  Accordingly, this factor weighs in favor of striking the infringement contentions accusing Vista.

## C.  Diligence

Neither party addresses this factor.  Despite receiving Vista source code after requesting it on December 21, 2006 and February 14, 2007, CAC failed to amend its P.R. 3-1 infringement contentions chart or even seek leave to amend it. Instead,  CAC submitted the  same chart on June 19, 2007, after receiving sufficient information to comply with P.R. 3-1(c) with regard to Vista.  It is now August and there is no indication that CAC has tried to meet its obligations. CAC's lack of diligence weighs in favor of striking the infringement contentions involving Vista.

## D.  Importance of Infringement Contentions and Lesser Sanctions

CAC argues that the relief sought by Microsoft is extreme and that dismissing the infringement case against Vista would be tantamount to a "Death-Penalty sanction."  Microsoft states that CAC actions have prevented them from adequately preparing for the case against Vista and that the court should grant its motion to show "how serious this Court regards adherence to discovery agreements."

The discovery deadline, deadline to file dispositive motions, and deadline to designate expert witnesses is August 24, 2007. This case is set for final pretrial and jury selection on November 5, 2007. The court's docket does not permit a continuance of these deadlines, let alone a delay of the trial to consider infringement contentions that should have been filed months ago.

---

[3]From the correspondence and written agreements, it appears as though Microsoft produced source code with the understanding that CAC would amend the infringement contentions and produce the requisite chart.

Striking the inadequate "footnote infringement contention" may preclude CAC  from asserting claims against one product. But the requirement to provide a claim chart for each accused product is crystal clear. Nobody even vaguely familiar with discovery rulings of the courts of the Eastern District under the Local Court Rules or the Rules of Practice for Patent Cases  could have any thought that this court is going to allow a party to ambush an opponent with a "seventy percent" disclosure contained in a footnote.

If the rules themselves and a consistent stream of opinions were not enough, this court informed the parties in no uncertain terms at the case management conference that full disclosure was required and that severe consequences would be the result of failure to comply. October 20, 2006 CMC Trans. at p. 23-25.   Allowing such a scanty and inadequate infringement contention disclosure to stand would deter neither game-playing nor actual violation of the rules - to the contrary it would actually discourage the voluntary exchange of information. Courts rely upon, and must even insist upon,  the professionalism and good faith cooperation of attorneys if they are  not to be bogged down in micro-managing discovery disputes.    This factor weighs heavily in favor of striking the contention.

## IV.  Conclusion

Lawyers do not fail to represent their clients zealously by cooperating in discovery and fully complying with disclosure rules without court orders. Rather, such professional conduct is in keeping with  Texas Rules of Professional Conduct 3.02 (applicable under Local Court Rule AT-2) and with Local Court Rule AT-3 (A) and (C).

Disallowing an exiguous infringement contention against one accused product is not the same as granting default judgment against Plaintiff.  CAC was on notice of the rules, had plenty of time to comply, and had sufficient information to file a proper infringement contention and chart.  The court finds no violation of due process in striking this contention.

IT IS THEREFORE ORDERED that Microsoft's Motion to Strike Portion of Plaintiff's Rule 3-1 Infringement Contentions Referring to Windows Vista and to Dismiss Infringement Claims Covering Windows Vista [Doc.# 85] is **GRANTED**.  It is further ORDERED that CAC's infringement contention referring to the   Vista product and  Plaintiff's infringement claims against the Vista product  are **STRUCK**.

. So **ORDERED** and **SIGNED** this **24** day of **August, 2007.**

_____

Ron Clark, United States District Judge